[ PHILADELPHIA, FEBRUARY 15, 1833.]

## Case of SPRING GARDEN STREET.

### CERTIORARI.

The Presidents of the Courts of Quarter Sessions are not required by the act of the 24th of *February*, 1806, to reduce their opinions to writing, and file the same of record.

The act of the 23rd of *April*, 1829, directing that "Spring Garden Street, as now laid down and confirmed by the Court of Quarter Sessions of the City and County of *Philadelphia*, west of Tenth Street, be continued of the same width from Tenth to Sixth Street," does not lay out a new and independent street, but is merely an amendment of the plan of the District of Spring Garden, as authorised by the act of incorporation, and confirmed by the court, and leaves the act of incorporation in force as regards the rights and remedies of the parties.

It is no objection to the report of viewers appointed to assess damages for opening a street, that they conversed with the owners of property adjoining, in the absence of the parties interested.

This court will not, on a *certiorari* to the Quarter Sessions to remove the proceedings in a road case, enter into the merits or determine facts.

THIS was a *certiorari* to the Court of Quarter Sessions of *Philadelphia* county, to bring up the proceedings of the court and jury assessing damages on opening Spring Garden street, in the District of *Spring Garden*, from Tenth to Sixth street.

A rule to shew cause why a *mandamus* should not issue to compel the president judge of the Court of Quarter Sessions to file his opinion of record, that the same might be brought into review before this court, was moved for on behalf of *A. L. Pennock*.

*Biddle* and *Chauncey* endeavoured to sustain the rule, under the act of the 24th of *February*, 1806, section twenty-fifth, requiring the "presidents of the courts of *Common Pleas*," &c. to reduce their opinions to writing and file the same of record. It was argued that as the same judge by the constitution of the state presided in both the Common Pleas and Quarter Sessions, the law was obligatory on him, when sitting in either court.

*Price*, for the District of *Spring Garden*, was stopped by the court.

BY THE COURT.—We find this law productive of much inconvenience in practice, and as the benefits expected from it have not been realized, we are not inclined to extend its operation by a liberal construction. It does not in its terms embrace the president of the Court of *Quarter Sessions*, and we are not disposed to carry it beyond its terms. The rule is denied.

The first exception taken to the proceedings below was, that the court had no jurisdiction.

Spring Garden street from Tenth to Sixth street, was laid down by authority of the third section of the act of the 23rd of *April*, 1829, in these terms: "That Spring Garden street as now laid down, and confirmed by the Court of Quarter Sessions of the City and County

(Case of Spring Garden street.)

of *Philadelphia*, west of Tenth street, be continued of the same width from Tenth to Sixth street."

*Biddle* and *Chauncey* contended, that this act was unconstitutional and void, because it took away the property of the citizen, without providing compensation therefor.

*Price* argued, that it had relation to the plan of the District of *Spring Garden*, authorized by the act of incorporation: that it was to restore to the plan, a street that had been obliterated by an order of court; and that the ordinary proceedings for the assessment of damages to owners whose property was to be taken for streets, were to be had in the case of this street, as if it had been laid down on the plan by the surveyor of the District. It was to be construed according to its purpose, and as a part of a system of laws for laying out the town plot of *Spring Garden*.

The court ordered the argument to proceed as to the remaining exceptions, to wit:

That the viewers conversed with owners of property adjoining, and others interested, in the absence of the parties and their counsel, and were influenced by such conversations: That they acted under the impression that Mr. *Pennock* had no title to the said land, and gave him no damages; and the court below erred in the same respect, and confirmed the report.

*Biddle* and *Chauncey* for the appellant.—The jury were guilty of undue practices, within the ninth rule of the court, in receiving improper evidence, from interested sources, not under oath, and in the absence of Mr. *Pennock*. The jury is required to be under oath, and the testimony should be under oath. The act of 1705 does not require referees to be sworn, yet it is the practice, and they must hear testimony in the presence of the parties. The province of the jury is judicial; there are parties, and large amounts of property at stake. Is it to act without principle or restriction? No tribunal of justice, can be safely allowed to seek information at large; and it is a fundamental principle of administering justice in every forum, to hear evidence in the presence of the parties. An undue practice, is any departure from correct practice; and what is not right should be corrected by the court. There was error also in law; the title of Mr. *Pennock* was mistaken. This property was not dedicated to public use by the deed of partition. If there was a dedication for a canal, it was conditional that the canal should come there, which it never did.

*T. Sergeant*, for the County Commissioners, and *J. R. Ingersoll* for the owners on the street.—This court will not go into general matters heard before the jury. The superintendence of this court is to be exercised only in two cases, " fraud, or undue practice," which imply something morally wrong, which has not been imputed to this jury. *Case of the Road from Penn's Grove to the Concord Road*, 4 *Yeates*,

372.  *Case of the Schuylkill Falls Road,* 2 *Binn.* 250.  When the court have departed from this rule, it has been to support the record.

The persons appointed are not strictly a jury, but viewers.  They are at liberty honestly to investigate all matters, and to derive their information from what sources they please to inform their judgment. Opinions are almost entirely speculative, as to the value of property, and the advantages or disadvantages to result from opening the street. The jury are not sworn to find according to the evidence, as common juries are; they have no judge or sheriff to decide upon the legality of the evidence offered; they are not even authorized to administer an oath, and may, and do, hear the statements of the parties themselves.  They are not kept together as other juries; they go out to view the ground, and adjourn from time to time, according to convenience.  If error or injustice takes place, it is subject to correction by the court below.

If Mr. *Pennock* had no title he cannot be heard.  He threw this ground out for a street and canal, by the deed of partition, and he was bound by this act, and could not resume what he had so dedicated.  If two or more lay out a street, neither can afterwards shut it up, or claim damages for it from the public.

Per Curiam.—The Quarter Sessions had undoubted jurisdiction. The object of the legislature was to amend the plan as confirmed, leaving the existing law in force as regards the rights and remedies of the parties; not to lay out a new and independent street.  As to the objection that the viewers conversed with the owners of property adjoining, in the absence of the parties interested, we see nothing wrong in that.  An inquest of this sort is restrained to no peculiar species of evidence, and may resort to any source of information which the members of it may think proper—even the evidence of their senses.  The subject of the remaining exception, is not properly within our cognizance.  We are restrained not only by the decision in the *Schuylkill Falls Road,* 2 *Binney,* 250, and the *Road from Penn's Grove to Concord,* 4 *Yeates,* 372, but by our own rule, from entering, in cases of this kind, into the merits, or determining facts on depositions; and whatever we may think of the justice of the report, it can have no influence on our judgment as to the regularity of the proceedings.

Proceedings affirmed.