Watts &S.
1ws261
142 382
1 WS 261
31 SC '600

# Commonwealth *against* Laub.

A variance between a statutory bond and the requisitions of the law, is fatal only when the condition would impose a greater burden on the obligor than the law allows.

Where a statute requires the approval of an official bond by the judges of the Court of Quarter Sessions, it is enough to give it authenticity, that it was done actually by the persons designated in the statute, although styling themselves judges of the Court of Common Pleas.

ERROR to the Common Pleas of *Adams* county.

The Commonwealth against William Laub, James Bell, Jr., David M'Creary, John L. Fuller, John Gilbert, John B. M'Pherson, and Daniel M. Smyser.

The declaration was in common form in debt upon the bond hereafter mentioned, dated the 9th day of January 1834; defendants pleaded *nil debent*, payment, and *non est factum*, on which issues were joined. The plaintiff gave in evidence the appointment of William Laub, as treasurer of Adams county, and his bonds to the county, &c., 9th of January 1834. The breaches assigned in the declaration were, the non-payment to the Commonwealth of the sum of $617.50, received for retailers' licenses of foreign merchandise, for the year 1834; $793.60 for tavern licenses, &c.; $30 for tin and clock pedlars, &c.

To sustain the issues on the part of the Commonwealth, her counsel offered in evidence,

The bond of the defendants to the Commonwealth, dated the 9th of January 1834, certified by George R. Espy, auditor general, (agreed to be considered as if the original bond was offered and the execution of it proved by the subscribing witnesses, &c.)

Know all men by these presents, that we, William Laub, James Bell, Jr., David M'Creary, John L. Fuller, John Gilbert, John B. M'Pherson, and Daniel M. Smyser, all of the county of Adams, and state of Pennsylvania, are held and firmly bound to the commonwealth of Pennsylvania, in the sum of five thousand dollars, lawful money of Pennsylvania, to which payment well and truly to be made and done, we jointly and severally bind ourselves, our heirs, executors, and administrators, firmly by these presents, sealed with our seals, and dated the 9th day of January, 1834.

The condition of the above obligation is such, that if the above bounden William Laub, treasurer of Adams county aforesaid, or his heirs, executors, administrators, or any of them, shall well and truly pay to the treasurer of the commonwealth of Pennsylvania,

[Commonwealth v. Laub.]

all moneys received by him as treasurer aforesaid, and for the use of the said commonwealth, on or before the second Tuesday in December next. Then this obligation to be void and of none effect, otherwise to remain in full force and virtue.

Endorsed,
" Recorded in the office for recording of deeds in and for the county of Adams, in state of Pennsylvania, in Book N., folio 107.

" Given under my hand and seal of said office, at Gettysburg, the 27th day of January 1834.
                              " Jno. B. CLARK, *Recorder.*"   [SEAL].

" The within bond, approved with the securities, by us, judges of the Court of Common Pleas of Adams county, in conformity with the Act within alluded to.
                                    " DANL. SHEFFER,
                                    " W. M'CLEAN."

The plaintiff offered to accompany the above with the accounts of William Laub, as regularly settled by the auditor general and state treasurer, showing the amount in the hands of the said William Laub.

To the matters so offered the defendants' counsel objected, to the whole and to every part, for the following reasons:

1st. That the Acts of Assembly prescribe the form of the bond to be taken to the commonwealth, and how to be approved and authenticated. The bond offered is not in conformity to the Act.

2d. There is no such bond as the one offered authorized by law.

3d. It is not taken by an officer authorized to take it, nor approved as the laws require.

4th. The Acts require three bonds instead of one.

5th. The condition is more severe than the laws justify.

The accounts are objected to because,

1st. The auditors of the county were to settle these accounts, and they did so, and reported only a balance due of $427.23.

Defendants here exhibited to the court a certified copy of settlement, filed in court 26th of January 1835.

2d. If the bond is inadmissible, the accounts offered are of course inadmissible, being without any legal object.

Admitted that William King was not recorder when the bond was taken, and that no other bonds of defendants are recorded in Adams county except those on pages 107–8, bond-books N., and now exhibited to the court.

The court sustained the objections and overruled the testimony. To which the counsel for the commonwealth excepted, and the court sealed their bill of exceptions.

*M'Clean* and *Reed*, for plaintiff in error. The bond is substan-

[Commonwealth v. Laub.]

tially in compliance with the Act of 15th April 1828; at all events it imposes no greater burden than that required by law: if the requisitions of the statute are substantially complied with, it is all that is necessary. 16 *Serg. & Rawle,* 48; 1 *Peters' C. C. Rep.* 47; 4 *Wash. C. C. Rep.* 620; 2 *Rawle* 158.

The approval of the bond was not a judicial act; it did not require the interposition of a court, but the personal act of the judges; and those of the Quarter Sessions and Common Pleas being the same persons, their approval is good by whatever name they may style themselves.

As to the taking of the bond by the recorder, they cited 6 *Binn.* 92.

*Cooper* and *Stevens,* for defendants in error, argued that the condition of the bond did not substantially conform to the requisitions of the Act of Assembly; the condition is prescribed by the Act, and it does not, like the present bond, require the officer to account by a certain time; nor does it appear that the bond was taken by the recorder. That it was recorded is not *prima facie* evidence that the recorder took the bond; it should have been acknowledged before him. And as if there were a determination to avoid a compliance with any one of the requisitions of the Act, this bond is approved by the judges of the Common Pleas, when the law requires that it should be by the judges of the Quarter Sessions. The sureties in this case are not responsible if the requirements of the law have been disregarded.

The opinion of the Court was delivered by

Gibson, C. J.—The principal objections to the competency of the bond were, that it was approved by persons styling themselves judges of the Common Pleas, and not of the Quarter Sessions; and that it does not appear to have been taken by the recorder of deeds. It has indeed been argued that the condition of it is not exactly what the law requires, inasmuch as the accountability of the officer is limited by it to moneys receivable by him before a particular day; but a variance between a statutory bond and the requisitions of the law is fatal to it only when the condition would impose a greater burden on him than the law allows, and in this instance his responsibility, if altered, was lessened.

Had the approval of the bond by the judges been in its nature the appropriate business of a Court of Quarter Sessions, or in anywise connected with it, the official style assumed by them in the certificate might have been matter of substance. In the case of *Spring Garden Street* (4 *Rawle* 192) the Statute of 1806, which requires the presidents of the Common Pleas, in certain cases, to file their opinions of record, was ruled to be inapplicable to them when sitting with their brethren as a Court of Quarter Sessions; and it cannot be doubted that an indictment appearing by the caption of it to have been found in the Common Pleas, would be quashed for want of jurisdiction. But the Act in ques-

tion was not done in any court whatever; and being essentially referrible to the function of no jurisdiction in particular, it is enough to give it authenticity that it was done actually by the persons designated in the statute, by whatever title. By the constitution, the judges of the Common Pleas are judges also of Oyer and Terminer, Quarter Sessions, and Orphans' Court; and they sit by virtue of one commission, in which they are styled judges of the Common Pleas. Does it not sufficiently appear, then, that this bond was approved by judges of the Quarter Sessions, styling themselves as they are styled in their commissions and in the constitution? In *Kean* v. *Franklin*, (5 *Serg. & Rawle* 154) an action was brought on a recognizance to John Joseph Henry, president of the Orphans' Court; and it was objected that as there was no officer thus styled by the constitution or the laws, the title should have been rejected, and the action brought in the name of judge Henry's personal representative; but inasmuch as an Act to alter the judiciary system then in force had said, " the judges of the Common Pleas, or any two of them, *the president being one*, shall compose and hold the Orphans' Court," it was determined that the president of the Common Pleas was ex-officio president of the Orphans' Court, and that the recognizance was taken to the officer and not to the man. Is not a judge of the Common Pleas, by the terms of the constitution, ex officio a judge of the Quarter Sessions? The recognizance might, in that case, have been taken to the officer indifferently by the one designation or the other; and the judges might in this have styled themselves either as of the Quarter Sessions or the Common Pleas.

Nor is the objection that the bond does not appear to have been taken by the recorder of deeds, better founded. I have no particular recollection of the argument in *Dunn* v. *The Commonwealth;* but the reasons of my late brother Duncan for holding even the office copy of such a bond inadmissible as statutory evidence, seem to be inconclusive. The object of the statute was public convenience in having the bond registered in the particular county before it should be deposited in the office of the auditor general; and, to accomplish this, the recorder of deeds was directed to *take* it and record it—in short, to attend to the execution and registry of it. That being done, it would matter but little whether it appeared to have been taken by the recorder or not, especially as its validity, unlike that of a recognizance, does not necessarily require any magisterial sanction. Perhaps too much stress was laid on a particular word; but we wish not to draw the authority of that case into question. The objection went to the competency of the office copy, and not of the original, for that was conceded. It was conceded also that the original might have been established by common law proof of its execution; and what is the case here? We find it to have been explicitly agreed at the trial, that the copy certified by the auditor general should be considered as the origi-

nal offered with proof of execution by the subscribing witnesses. On the very principle of *Dunn* v. *The Commonwealth*, then, it ought to have been received with the certified copies of the defendant's accounts, which were rejected only because of the supposed incompetency of the bond as a ground for their admittance.

Judgment reversed, and a *venire de novo* awarded.