IN

# THE SUPREME COURT

OF

## PENNSYLVANIA.

---

### EASTERN DISTRICT—PHILADELPHIA 1866.

---

### Haines *versus* Levin.

1. The constitutional provision that "trial by jury shall be as heretofore," &c., was not to contract the power to furnish modes of civil procedure in courts, but to secure the right of trial by jury in its accustomed form, before the rights of a party shall be finally decided.

2. Beyond this, there is no limitation upon the legislature in constructing modes of redress for civil wrongs and regulating their provisions.

3. Under the Act of December 14th 1863, relative to landlords and tenants, the right of trial by jury is secured to the tenant before his right can be finally decided, and the conditions exacted are not so onerous as to be a substantial denial of his right; it is therefore constitutional.

4. Where a statutory condition for a bond or recognisance limits the terms upon which the legal remedy is given, and terms harder than the statute requires are exacted, the bond or recognisance is void, and the surety is discharged.

5. When the statutory obligation is given to secure the performance of a duty, if the vicious portion is severable from the remainder, the bond is valid as to that which is good.

6. A recognisance in error, although not in the form prescribel by law, if taken in a form assented to by both parties, will avail as if taken in due form, and the writ of error will be a *supersedeas* to further proceedings in the court below.

7. If the prothonotary of the Supreme Court certifies on a writ of error that bail has been taken and entered, the court below cannot inquire into the terms of the recognisance ; if it be erroneous, it must be corrected in the Supreme Court.

(412)

[Haines v. Levin.]

WRIT of error and *certiorari* to the Court of Common Pleas of *Philadelphia*.

This was a proceeding, under the Act of December 14th 1863, to recover possession of leased premises.

Julie Levin, the defendant in error, leased the premises on the 20th of August to Elizabeth Haines, the plaintiff in error, for one year, and on the 19th of May 1865, the landlady notified her tenant to remove at the end of the year. The tenant having refused to remove, proceedings were commenced by Mrs. Levin on the 30th of August 1865 to recover possession. She recovered judgment before the alderman on September 15th. The tenant removed the proceedings by *certiorari* to the Court of Common Pleas, and they were affirmed.

A writ of error was taken to remove the judgment of the Court of Common Pleas; that court afterwards, on a rule to show cause, awarded a writ of possession. A *certiorari* was then issued from the Supreme Court, at the instance of the tenant.

The reporter has received no paper-book of the plaintiff in error. The statement of the case is made from the paper-book of defendant in error and the opinion of this court.

*H. M. Phillips* and *Thompson*, for defendants in error.

The opinion of the court was delivered, January 23d 1866, by AGNEW, J.—This case is before us in two forms, to wit:—A writ of error to the judgment of the Court of Common Pleas of Philadelphia city and county, in a *certiorari* issued to remove a landlord and tenant proceeding under the Act of 14th December 1863, before a magistrate; and a writ of *certiorari* to remove the writ of possession issued by the same court after affirmance of the proceedings of the magistrate.

In the first branch of the case there is but one question, to wit, the constitutionality of the Act of 1863, which substitutes the judgment of one justice to that of two justices and a jury of freeholders, under the old Act of 1772, which by the latter being final as between the landlord and the tenant, and gives in lieu thereof an appeal to the Court of Common Pleas, to be taken within ten days on giving bail absolute by recognisance for all costs accrued and to accrue in case the judgment be affirmed, and also for all rent that has accrued or may accrue up to the time of final judgment. The act further provides that the appeal shall not be a *supersedeas* to the warrant of possession, and shall be tried in the same manner as actions of ejectment, and if the jury find for the tenant, they shall assess his damages sustained by removal from the premises, for which he shall have judgment with costs,

[Haines *v.* Levin.]

and judgment to recover the possession with writs of execution to enforce the judgment.

The Act of 1863 does not in terms provide for the mode of taking the appeal, but for this purpose refers itself to the provisions of the Act of 3d April 1830.

The Act of 1830 has been upon the statute-book for thirty-five years, and has been extensively used in this city (Philadelphia) without any question of its constitutionality, although a number of cases arising under it have been brought into this court for revision. While this fact will not avail if the law be void, yet it is significant of the universal opinion in its favour by the profession, and especially by the bar of a city proverbial for their acuteness and erudition. Besides, excepting a single feature to be noticed, the Act of 1863 and that of 1830 stand upon the same footing as the Act of 1810, giving civil jurisdiction to justices, which has been held to be constitutional. It is therefore unnecessary to discuss the general doctrine of the constitutionality of such laws. This will be found to be sufficiently done in Van Swartow *v.* Commonwealth, 12 Harris 131, and Warner *v.* Commonwealth, 1 Wright 45. The Act of 1863 having therefore provided sufficiently to secure to the tenant an appeal and trial by jury, its constitutionality could not be doubted, but for the fact that it declares that the appeal shall be no *supersedeas*, thus enabling the landlord to take the fruits of the proceeding before a final termination of the cause. This certainly is at war with our common notions of the modes of administering justice; yet it is not the supposed hardship of giving a writ to take the possession and collect the damages, which must decide the question of constitutional power. The great purpose of the constitution in providing that "trial by jury shall be as heretofore, and the rights thereof remain inviolate," was not to contract the power to furnish modes of civil procedure in courts of justice, but to secure the right of trial by jury in its accustomed form before rights of person or property shall be finally decided. Hence the right of trial as it then existed was secured, and the trial itself protected from innovations which might destroy its utility and its security as a palladium of the liberties of the citizen. But beyond this point there is no limitation upon legislative power in constructing modes of redress for civil wrongs, and regulating their provisions.

In endeavouring to adjust the rights of landlords and tenants upon some basis of mutuality, the legislature took into view the hardships to which each class might be subjected. On the one hand, a tenant holding over after the termination of his lease often subjects his landlord to great inconvenience and loss. The latter may, as he has a right to do, lease to another, to commence at the expiration of the former tenant's term, and by the holding over not only lose a better tenant at perhaps a higher rent, but be

[Haines *v.* Levin.]

subjected also to damages for his breach of covenant. The rent according to the terms of the lease, which a holding over is said to imply, may, after a lease of a few years duration, be far below the current rate at its expiration. Hence it is all important to landlords that tenants should not be able by fruitless appeal to postpone the delivery of possession through the delays incident to proceedings at law. On the other hand, poor men who must lease of others, may suffer injustice at the hands of wealthy owners of property, whose influence may possibly draw to themselves the unjust judgment of the magistrate, and they may have to turn out of possession without a provision for shelter to their families.

At first blush there is a good deal of apparent hardship in this, before a final trial of the right can be had by an impartial jury. But this is more seeming than real, when we reflect that in nineteen cases out of twenty the lease is in writing, and defines its own expiration so distinctly that but few magistrates, acting not only under oath, but with the fear of impeachment and loss of reputation, can be found to adjudge that it is at an end, before its termination has arrived. Without finding this expiration, no judgment for damages can be given, or warrant of possession issue.

But if a landlord so hardened could be found to prefer the complaint, and a magistrate so base as to allow it, when the term was manifestly not at an end, the legislature have furnished the remedy in providing, that if the verdict on the appeal shall be for the tenant, the jury shall assess his damages by reason of his removal, which he shall recover with costs, and with restoration to possession. Few landlords, indeed, will be found to risk the penalty, for an unjust ouster of their tenants from possession before the end of the term. They risk not only the payment of smart money, which in such cases juries are not apt to withhold, but the payment of damages to the new tenant, who may be ousted by the writ of possession. It is clear, that under the Act of 1863, the right of trial, in its accustomed form, is secured to the tenant before his right can be finally determined, and the only question is whether the conditions exacted are so onerous as to amount to a substantial denial of the right. The exacting of bail for an appeal to secure no more than the just rights of the landlord, on the tenant's failure to establish his own right, to deny him the restoration of his property, is not an onerous condition.

This imposes no harder burden than did the common law, from which the trial by jury is derived, which held not the property but the persons of debtors to bail, in order to await the issue of the action.

In many proceedings at law, for example, in foreign attachment and in replevin, bail is required before the party can secure a trial of his right. Nor is the surrender of possession before trial

[Haines *v.* Levin.]

any harder than giving bail under arrest to secure an appearance, especially in view of the security from wrong afforded to the tenant, by a recovery of all his damages and his restoration to his rights.   Upon the whole the compensatory features in the adjustment of the remedy, to the mutual rights of the parties, redeem it from the imputation of injustice to the tenant, and vindicate the proceeding from the charge that it is a substantial denial of the right of trial by jury.

In the proceedings brought up by the *certiorari*, the question is whether the writ of possession allowed by the Court of Common Pleas could be issued, after the filing of the writ of error in that court.   This depends not on the Act of 1863, but the Act of 1836.

The bail for appeal required by the former (by reference to the provisions of the Act of 1830) has no relation to this court.   That is bail for an appeal to the Common Pleas.   The *certiorari* also given by the Act of 1863 is a *certiorari* from the Common Pleas to the magistrate.   But the writ of error which is sued out of this court to the Common Pleas differs from both, and is regulated by the provisions of the seventh section of the Act of 16th of June 1836, which enacts that no execution shall be stayed in civil actions or proceedings by a writ of error unless recognisance of bail be given with condition to prosecute the writ of error with effect; and if judgment be affirmed or the writ of error discontinued or *non-prossed* to pay the debt, damages and costs, as the case may be, adjudged or accruing upon such judgment, and all other damages and costs that may be awarded *upon such writ of error.*

The recognisance taken in this case departs entirely from that which is provided as stated above.   It binds the surety to pay such *mesne profits,* costs, damages and sums of money as *shall be awarded* upon or *after such judgment* affirmed, discontinued or nonsuit had, and to pay *all rent* which has accrued or may accrue for the *unlawful detention* of the premises.

The judgment of the magistrate under the Act of 1863 is for such damages as in his opinion the landlord may have sustained —damages of course from all legitimate sources.

But the mesne profits demanded by this recognisance must mean (if it mean anything) for the detention of the premises after the judgment of the magistrate, the damages awarded being a satisfaction for all that had gone before.   These mesne profits, and the sums of money by the terms of the recognisance, are not such as accrued or were to accrue under the affirmed judgment or to be awarded upon the writ of error, but were to be such as should be awarded after the judgment as well as upon it; and (by the generality of language) by any court.   Besides, the plaintiff in error was to pay all rent which had accrued or might

[Haines *v.* Levin.]

accrue for the unlawful detention of the premises, introducing a new claim for rent accruing before as well as after the judgment. These terms differed, therefore, from those prescribed by the Act of 1836, and were much harder.

When a statutory condition is expressed, limiting the terms upon which a legal remedy is given, and harder terms are exacted than the statute requires, the recognisance or bond is void, as a departure to the prejudice of the rights of the party entitled to his redress, and the surety is discharged. It is different where the statutory obligation is given to secure the performance of a duty; then, if the vicious portion of the condition is severable from the remainder, the bond is valid as to the part which is good: Commonwealth *v.* Lamb, 1 W. & S. 261; Huling *v.* Directors of the Poor, 3 Harris 409; Shunk *v.* Miller, 5 Barr 250. But why should this be visited upon the plaintiff in error? She did all she could to make her writ a *supersedeas,* and if she failed it was because the officer of the court failed to conform to the law. His error was an excusable one. The first recognisance was objected to by the defendant in error, and this was drafted to meet the objection, and was approved by both parties; but the greater reason this, that the plaintiff in error should not lose the benefit of her *supersedeas.*

Had the recognisance been taken in the terms of the Act of 1836, her writ of error would clearly be a *supersedeas* to the writ of possession. It is the ordinary case of a writ of error out of this court to remove a civil proceeding, and comes directly within the terms of the Act of 1836. It is not governed by the Act of 1863, which applies only to the appeal and the *certiorari* in the Common Pleas. Now certainly it will not do to require harder terms than the law does, and after the plaintiff in error has complied with them, in order to obtain her remedy, to turn upon her and say your recognisance is void and your writ no *supersedeas.* How can the court below determine this? It cannot inspect our record to see the terms of the recognisance.

The prothonotary certifies on his writ recognisance with bail taken and entered, and this is all the court below can know. If the recognisance be defective or erroneous, let the opposite party come here and except to it, and ask us to compel the plaintiff in error to perfect it or suffer execution to be awarded.

Not having done this, and the court below having erred in awarding the writ of possession after a writ of error filed, the order awarding the writ is reversed, and the writ quashed, but without prejudice to the right of the defendant in error to proceed by a new writ of possession to be issued out of the court below upon the judgment affirmed in the writ of error; and the judgment is now ordered to be affirmed in the proceedings brought up by the writ of error.