DISTRICT COURT.                                    APRIL 7, 1860.

## ADMIRALTY.

## RUTTER, NEWHALL & CO. *v.* THE BARQUE FERRIS AND CARGO.

### SALVAGE—DERELICT VESSEL AND CARGO.

1. A judicial sale of a vessel is never a fair test of her value.

2. Where she can be restored to a navigable condition, and enabled to resume her voyage with her cargo on board, the award of a fixed sum to the salvors is always preferable to the award of a proportion of the proceeds of a future judicial sale; and the amount of the award should be estimated with a view to the probability of its being raised without an admiralty sale, and, in some cases, with regard to the probability of its being raised by way of bottomry or hypothecation. In cases of salvage prompt redemption of the property is encouraged, both in the earlier and ulterior stages of them, in the practice of permitting pecuniary deposits to secure the salvage money.

LIBEL for salvage.

## STATEMENT OF THE CASE.

The barque Ferris, a British vessel, left New York with a cargo of naval stores, rosin, tar, etc., on board, upon the 14th February, 1860, bound for the port of Liverpool. After proceeding about two days upon her voyage, the vessel began to

labor heavily, shipping large seas on deck, when the pumps were sounded, and five feet of water found in the hold. The efforts made to free her from the water being ineffectual, she made a signal of distress, and her captain and crew were taken on board by the ship The Forest City, which carried them to New York. On the 17th February she was found by the vessel of the libellants, the barque Charlotte E. Tay, thus abandoned at sea and derelict. The crew of the Charlotte E. Tay consisted of six men, besides the captain, two officers, the steward, and a cabin boy. The first officer and two of the crew of the Tay were placed on board the Ferris, with orders to bring her, if possible, to the port of Philadelphia. For three days, the weather, continuing tempestuous and the sea running high, they labored to keep her afloat; when, on the 20th February, the wind changing, they made the Delaware breakwater and took four pilots on board, who brought her to this port, which she reached on Thursday, February 23, 1860.

The libel averred, and it was not denied in the answer, that had it not been for the assistance thus rendered to her the barque Ferris and her cargo would have been lost; and prayed a decree of such sum of money or proportion of the value of the barque and her cargo to the libellants, as compensation for their salvage services, as should be meet and reasonable.

*Kane* and *Wharton,* for libellants.
*Riche, G. W. Biddle, Waln,* and *Cramond,* for respondents.

## CADWALADER, J.

In this case the services were highly meritorious. The property, which has been wholly saved, would probably have been wholly lost if it had not been rendered. Whether, indeed, any particular merit is attributable to the navigator of the Tay is, perhaps, doubtful. But whatever may detract from the value of the services rendered by the vessel increases the merit of her crew who boarded the derelict vessel, and brought her into port. This may, therefore, affect the distribution of the salvage to be decreed, but should not, in the meantime, operate in

reduction of its entire amount.   If a proportion of the net proceeds of a future judicial sale should be decreed as the compensation for the salvage service, I think that, with a due regard to the policy of encouraging the enterprise and perseverance of nautical salvors, the proportion ought to be one-half.   But I do not think this the proper mode of determining the amount. A judicial sale is never a legal test of value.   Where it has occurred in consequence of the default of a party who should have protected the property against it, he is liable for the difference between the actual proceeds and the fair market value. This has been adjudged in the Circuit Court for this district, sitting in equity.   A judicial sale under proceedings in admiralty is peculiarly the reverse of a fair test of value; it is more frequently the means of producing inordinate sacrifice. The subject of sale is often at a place not its proper market. In order to avoid the charges of custody and other accumulating costs, the sale is often ordered before absent parties interested can be represented.   In other cases, in consequence of the delay which occurs, the property frequently undergoes deterioration, while these charges and costs accumulate.   Afterwards, when the dregs of litigation are sold, they are often sadly sacrificed according even to their deteriorated value. This vessel and her cargo together, according to the market rate of commercial sales and purchases, are now valued at between $18,000 and $19,000.   Experience of admiralty sales in all parts of the world attests the probability that the net future avails of a sale of this property by the marshal might not exceed the half of that amount.   That the present case would probably constitute an exception from the general truth of the remark is not safely to be conjectured.   But if it were an ascertained exception, the general remark as to the ordinary effect of awarding one-half of the net proceeds would not be less applicable.

When a vessel can be restored to a navigable condition, and enabled to resume her voyage with her cargo, the award of a fixed sum is always preferable to that of a proportion.   The value of the property saved is, of course, always to be regarded

in fixing the sum. The preliminary appraisement may be regarded as determining the approximate value according to the price of a sale made without undue sacrifice. The proportion of this appraised value decreed in the form of a fixed sum should not be the same as the proportion of proceeds of a future judicial sale. The amount should be estimated with a view to the probability of its being paid without any such sale; and, in some cases, with a view of a probability of its being raised by way of bottomry, or simple hypothecation. An examination of the cases of salvage awarded in fixed sums for boarding and bringing in derelict vessels will show, I think, that the proportions of such sums to the respective amounts of the preliminary appraisements has usually been less than one-half of the proportions awarded as payable out of proceeds of judicial sales. This difference in proportion has not always been attended with any reduction of the amounts received by the salvors.

In administering maritime law under this head, the prompt redemption of the property saved from judicial custody is encouraged in the practice of permitting pecuniary deposits to secure the salvage. This is usually done in the earliest stage of a salvage cause. In the case of a vessel or other property not at the port of its ownership, an extended application of the principle in ulterior stages of the cause may sometimes promote the interests of commercial navigation. This remark applies particularly when, as in the present case, the vessel and cargo are of distant foreign ownership. Merchants and capitalists at or near the port of refuge ought always to be encouraged and facilitated in advancing to her masters and owners funds to pay salvage and enable her to resume her voyage, instead of abiding the doom of an admiralty sale. Justice must, at the same time, be done to the salvors. But they are usually nautical persons, to whom promptness of settlements is often quite as important as the amount receivable. Public policy, rather than their own merit, often determines the amount of their compensation. It ordinarily exceeds greatly the mere value of service rendered. Public policy has likewise other

objects, and among them that of encouraging offers to rescue the property from litigation.

In a foreign port, by which I mean any other than a vessel's home port, when a sum of money not inadequate as a compensation to salvors is promptly offered, at an early hearing of a salvage cause, and the master or agent of the owner cannot obtain an advance of a greater sum in order to get the vessel afloat and enable her to resume her voyage, the policy which would induce a Court of Admiralty to adhere very closely to any slightly different rate or amount that might otherwise have been decreed would be narrow and illiberal. The rejection of such an offer might occur when a larger amount could not be raised. The result might then be a disastrous judicial sale. The party making such an offer becomes, in certain cases, as it were, a second salvor. The rate of salvage compensation is always, if not arbitrary, more or less uncertain. If the particular circumstances of a case, nicely scanned, would, in the absence of such an offer, have induced a judge to decree a somewhat larger amount, he might little promote the interests of navigation by rigidly refusing to liberate the property saved on payment of the sum offered.

In the present case, if no such offer had been made, I would probably have decreed the payment of $4,500, with the expenses, which are said to amount to about $850, and costs to the libellants.

By consent, this cause was heard summarily soon after its commencement. The agent of the foreign owners—the master of the vessel assenting—without any knowledge of my views as to the amount, offered at the hearing to pay in cash, at once, $5,000, to obtain the liberation of the property saved, without making any further payment in reimbursement of expenses incurred by the salvors, or for costs. This offer was promptly made, in the earliest stage of litigation in which parties in the situation of those making it could, through the depositions, have been properly apprized of the particular merits of the controversy.

The difference between this offer and the decree which I

might otherwise have made is too small to be acted upon. Perhaps the decree for $4,500 and expenses and costs of suit, if made, would be acquiesced in, and the amount at once paid. But I will not speculate upon such a contingency. By so doing in this or in other cases, I might frustrate the purpose in view. A small addition might, for example, prevent a loan on bottomry from being effected.

Acting upon the general principle above defined, I prefer decreeing that, upon the payment of $5,000 to the salvors without costs, the vessel and her cargo be liberated. This will leave $4,000, more or less, to the salvors. The amount is much more than an ample compensation for the service performed, and includes, I think, a sufficient addition to fulfill the purpose of public policy. To nautical salvors in general, a decree for such an amount, with immediate payment, would be preferable to a decree of one-half of the net proceeds of the property after a protracted litigation. There is no certainty that the amount might not even exceed one-half of the net ultimate available proceeds.

Decree for $5,000, without costs.

An APPEAL to the Circuit Court having been taken, so much of the decree as related to costs was reversed, and an order made in favor of the libellants for full legal costs.