626 A.2d 537

**Jeffrey BLUM, a minor, by his parents and natural guardians, Joan and Fred BLUM, and Joan and Fred Blum, in their own right, Appellants,**

**v.**

**MERRELL DOW PHARMACEUTICALS, INC., and Rite–Aid Pharmacy, Appellees.**

Supreme Court of Pennsylvania.

Argued Jan. 22, 1992.

Decided June 3, 1993.

98

---

Thomas R. Kline, Philadelphia, for appellants.

Andrew Rogoff, Joseph E. Conley, Jr. (pro hac vice), Edward W. Madeira, Philadelphia, for appellees.

Before NIX, C.J., and LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION

NIX, Chief Justice.

Appellants, Jeffrey Blum, a minor, by his parents and natural guardians, Joan and Fred Blum, and Joan and Fred Blum in their own right, appeal from an Order of the Superior Court affirming in part and reversing in part the Order of the Court of Common Pleas of Philadelphia County granting a motion for judgment notwithstanding the verdict ("judgment n.o.v."), in favor of Rite–Aid Pharmacy ("Rite–Aid"), and denying a motion for judgment n.o.v. and/or new trial filed by Appellee, Merrell Dow Pharmaceuticals, Inc., ("Merrell Dow"). The issue before this Court is whether Article I, Section 6 of the Pennsylvania Constitution entitles a party who demands a twelve person jury to a verdict from a jury of twelve persons. For the reasons that follow, we affirm the Superior Court Order and hold that Section 6 of Article I of the Pennsylvania Constitution entitles a party who properly demands a twelve person jury to a verdict from a jury of twelve persons.

This appeal stems from the following facts. In September of 1980, Mrs. Blum gave birth to a son, Jeffrey, who was born with deformities of both legs known medically as *talus equinovarus*, also described as bilateral "club feet." Subsequently, Mr. and Mrs. Blum, on behalf of their minor son, filed a complaint in trespass alleging that Mrs. Blum's ingestion of the prescription drug Bendectin during her pregnancy was the direct and proximate cause of Jeffrey's deformity. The Blums filed the complaint against Merrell Dow as the manufacturer and Rite–Aid as the supplier of the drug.

On October 24, 1986, Merrell Dow filed and served on the Blums a written demand for a twelve member jury with two alternates. Merrell Dow's request for twelve jurors was granted; however, no alternates were permitted to be chosen before the case went to trial on December 3, 1986.

On December 12, 1986, testimony during the trial was delayed when juror number 3, William G. Parsons, failed to appear. Merrell Dow objected to proceeding without twelve jurors. R.R. 201a. Nevertheless, following a recess during

which the trial court was informed that juror number 3 was ill, the trial court decided to continue the trial with only eleven jurors. R.R. 202a–203a. Merrell Dow then moved for a mistrial arguing that it was entitled to a jury of twelve members. R.R. 203a–205a. The trial court denied the Motion for Mistrial. R.R. 206a. On January 20, 1987, the eleven person jury returned a unanimous verdict for the Blums. R.R. 218a–223a. Subsequently, the trial court granted delay damages, granted a motion for judgment n.o.v. to Rite–Aid,[1] but denied a motion for judgment n.o.v. to Merrell Dow.

Both the Blums and Merrell Dow appealed to the Superior Court. Merrell Dow alleged, *inter alia*, that the trial court erred when it denied Merrell Dow's Motion for Mistrial when juror number 3 was excused from jury service by reason of illness. The Superior Court reversed and remanded for a new trial holding that Merrell Dow's right to a trial by a jury of twelve members pursuant to Section 6 of Article I of the Pennsylvania Constitution had been violated where the verdict rendered against Merrell Dow was by a jury of only eleven members. *Blum v. Merrell Dow Pharmaceuticals, Inc.*, 385 Pa.Super. 151, 560 A.2d 212 (1989).[2] Additionally, the Superior Court affirmed the trial court to the extent it granted Rite–Aid a judgment n.o.v.

The Blums appealed to this Court. On May 7, 1991, this Court granted allocatur limited to the issue of whether the Pennsylvania Constitution, Article I, Section 6, entitles a party who demands a twelve person jury to a verdict of twelve persons. 527 Pa. 614, 590 A.2d 755 (1991). For the reasons that follow, we affirm the Superior Court and hold that the Pennsylvania Constitution, Article I, Section 6, entitles a party

1. The Superior Court affirmed the judgment n.o.v. as it pertained to Rite–Aid, relying on its decision in *Coyle v. Richardson–Merrell, Inc.*, 372 Pa.Super. 118, 538 A.2d 1379 (1988), *aff'd*, 526 Pa. 208, 584 A.2d 1383 (1991), wherein the Superior Court held that a pharmacist could not be held strictly liable under § 402A of the Restatement Second of Torts as a supplier in the chain of a prescription drug. Accordingly, in the instant case, allocatur was denied as to that issue and, therefore, that issue will not be addressed.

2. The Superior Court, finding this issue dispositive, did not address any other claims raised by Merrell Dow.

who properly demands a twelve person jury to a verdict of twelve persons.

## United States Constitution

Our starting point must be the decision of the United States Supreme Court in *Williams v. Florida,* 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970). In *Williams,* the Supreme Court departed from a long history of requiring a twelve person jury as a necessary ingredient of the Sixth Amendment[3] guarantee of trial by jury in all criminal cases. *Id.* (departing from, *e.g., Thompson v. Utah,* 170 U.S. 343, 18 S.Ct. 620, 42 L.Ed. 1061 (1898)). The Supreme Court in *Williams* concluded that the "twelve man panel is not a necessary ingredient of 'trial by jury,' and that [Florida's] refusal to impanel more than six members provided for by Florida law did not violate [Williams'] Sixth Amendment rights as applied to the states through the Fourteenth [Amendment]." 399 U.S. at 86, 90 S.Ct. at 1898, 26 L.Ed.2d at 452–53.

In *Williams,* prior to his trial for robbery in the State of Florida, Williams filed a motion to impanel a twelve person jury[4] instead of a six person jury provided by Florida law in all capital cases. *Id.* at 80, 90 S.Ct. at 1895, 26 L.Ed.2d at 449. That motion was denied. Williams was convicted as charged and was sentenced to life imprisonment. The District Court of Appeal affirmed. The United States Supreme Court affirmed in a 7–1 decision.

Justice White, writing for the majority in *Williams,* first indicated "[t]hat history revealed a long tradition attaching

**3.** The Sixth Amendment of the United States Constitution provides:
 In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed; which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witness against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense. U.S. Const. amend. VI.

**4.** Williams also filed a "Motion for a Protective Order," seeking to be excused from the requirements of Rule 1.200 of the Florida Rules of Criminal Procedure.

great importance to the concept of relying on a body of one's peers to determine guilt or innocence as a safeguard against arbitrary law enforcement." *Id.* at 87, 90 S.Ct. at 1899, 26 L.Ed.2d at 453. The Court observed "[t]hat same history, however, affords little insight into the considerations that gradually led the size of [the jury] to be generally fixed at 12." *Id.* (footnote omitted). Even though the size of the jury at common law became fixed at twelve, the Court perceived that particular feature to have been a historical accident. *Id.* at 89–90, 90 S.Ct. at 1899–1900, 26 L.Ed.2d at 454.

The Supreme Court therefore concluded:

[T]here is absolutely no indication in "the intent of the Framers" of an explicit decision to equate the constitutional and common-law characteristics of the jury. Nothing in this history suggests, then, that we do violence to the letter of the Constitution by turning to other than purely historical considerations to determine which features of the jury system, as it existed at common law, were preserved in the Constitution. The relevant inquiry . . . must be the function that the particular feature performs and its relation to the purposes of the jury trial.

*Id.* at 99–100, 90 S.Ct. at 1904–1905, 26 L.Ed.2d at 460. The Court reiterated that "the purpose of the jury trial . . . is to prevent oppression by the Government." *Id.* at 100, 90 S.Ct. at 1905, 26 L.Ed.2d at 460 (citing *Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968)). As to the appropriate number of jurors, the Court announced that "the number should probably be large enough to promote group deliberation, free from outside attempts at intimidation, and to provide a fair possibility for obtaining a representative cross-section of the community." 399 U.S. at 100, 90 S.Ct. at 1905, 26 L.Ed.2d at 460. With these goals in mind, the Court found little reason to think that a jury of six was less likely to achieve the stated goals than when the jury numbers twelve. *Id.* Thus, the Court deduced that "the fact that the jury at common law was composed of precisely 12 is a historical accident, unnecessary to effect the purposes of the jury sys-

tem and wholly without significance 'except to mystics.'" *Id.* at 102, 90 S.Ct. at 1907, 26 L.Ed.2d at 461 (citation omitted).

The Court in *Williams* then held that the twelve person panel is not a necessary ingredient of the Sixth Amendment right to "trial by jury" as applied to the states through the Fourteenth Amendment. *Id.* at 103, 90 S.Ct. at 1907, 26 L.Ed.2d at 462. However, it noted the states are free to determine the value of larger juries and smaller juries and that they are "unrestrained by an interpretation of the Sixth Amendment that would forever dictate the precise number that can constitute a jury." *Id.*

In *Williams,* however, the Supreme Court had reserved the question of whether "additional references to the 'common law' that occur in the Seventh Amendment [5] might support a different interpretation" regarding jury trials in civil cases. *Colgrove v. Battin,* 413 U.S. 149, 151, 93 S.Ct. 2448, 2449, 37 L.Ed.2d 522, 526 (1973) (quoting *Williams v. Florida,* 399 U.S. 78, 92 n. 30, 90 S.Ct. 1893, 1901 n. 30, 26 L.Ed.2d 446, 455 n. 30 (1970)). In *Colgrove,* a United States District Court Judge placed a civil diversity case before a jury of six in compliance with Local Rule 13(d)(1) of the Revised Rules of Procedure of the United States District Court for the District of Montana. Justice Brennan, writing for the majority, held that a jury of six satisfies the Seventh Amendment's guarantee of trial by jury in civil cases. *Id.* at 160, 93 S.Ct. at 2454, 37 L.Ed.2d at 531. Moreover, the Supreme Court broke with earlier decisions that stated "trial by jury" means "a trial by twelve" because they were dicta. *Id.* at 157, 93 S.Ct. at 2452, 37 L.Ed.2d at 529. (citing *Capitol Traction Co. v. Hof,* 174 U.S. 1, 13, 19 S.Ct. 580, 585, 43 L.Ed. 873 (1899); *Maxwell v. Dow,* 176 U.S. 581, 20 S.Ct. 448, 44 L.Ed. 597 (1900); *American Publishing Co. v. Fisher,* 166 U.S. 464, 17 S.Ct. 618, 41 L.Ed. 1079 (1897)).

**5.** The Seventh Amendment provides:

In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law. U.S. Const. amend. VII.

The Supreme Court concluded that it was the right to trial by jury, not the incidents of trial by jury, that was preserved in the Seventh Amendment.

[B]y referring to the "common law," the Framers of the Seventh Amendment were concerned with preserving the *right* of trial by jury in civil cases where it existed at common law, rather than the various incidents of trial by jury. In short, what we said in *Williams* with respect to the criminal jury is equally applicable here: constitutional history reveals no intention on the part of the Framers "to equate the constitutional and common-law characteristics of the jury."

*Id.* 413 U.S. at 155–56, 93 S.Ct. at 2451–52, 37 L.Ed.2d at 528 (citation omitted) (footnote omitted). It found that twelve members is not a substantive aspect of the right of trial by jury warranting preservation. *Id.* at 157, 93 S.Ct. at 2452, 37 L.Ed.2d at 529. Moreover, because of the determination in *Williams,* "that there was 'no discernable difference between the results reached by the two different-sized juries,'" the Court in *Colgrove* held that a jury of six satisfies the Seventh Amendment. *Id.* 413 U.S. at 158, 93 S.Ct. at 2453, 37 L.Ed.2d at 530 (quoting *Williams,* 399 U.S. at 101, 90 S.Ct. at 1906, 26 L.Ed.2d at 461.) The Court expressed no view, however, on whether a number less than six would pass constitutional muster.

In 1979, the United States Supreme Court addressed the issue of whether a state criminal trial to a jury of only five persons deprives the accused of the right to trial guaranteed to him by the Sixth and Fourteenth Amendments. *Ballew v. Georgia,* 435 U.S. 223, 98 S.Ct. 1029, 55 L.Ed.2d 234 (1978). In *Ballew,* the defendant was charged with a misdemeanor for violating Georgia obscenity statutes and was brought to trial before a five person jury pursuant to Ga. Const., Art. 6, § 16, ¶ 1, codified as Ga.Code § 2–5101 (1975), and to 1890–1891 Ga.Laws, No. 278, pp. 939–938, and 1935 Ga.Laws, No. 38, p. 498. *Id.* at 226, 98 S.Ct. at 1032, 55 L.Ed.2d 234 (footnote omitted). Justice Blackmun, writing for the majority, held that the five member jury did not satisfy the jury trial

guarantee of the Sixth Amendment as applied to the states through the Fourteenth Amendment. *Id.* at 228, 98 S.Ct. at 1032, 55 L.Ed.2d at 239. In doing so, the Supreme Court concluded "that the purpose and functioning of the jury in a criminal trial is seriously impaired, and to a constitutional degree, by a reduction in size to below six members." *Id.* at 239, 98 S.Ct. at 1038, 55 L.Ed.2d at 246.[6] Thus, the United States Supreme Court, in interpreting the Federal Constitution, allows trials by less than twelve member juries in civil and criminal cases and prohibits less than six member juries in criminal cases.

We must now determine whether the *Williams, Colgrove* and *Ballew* trilogy, which allows trial by less than twelve member juries in civil cases, is properly part of the jurisprudence of this Commonwealth, by virtue of Section 6 of Article I of the Pennsylvania Constitution. As previously stated, we find that it is not.

### Pennsylvania Constitution

■ This Court has emphasized that, in interpreting a provision of the Pennsylvania Constitution, we are not bound by the decisions of the United States Supreme Court which interpret similar federal constitutional provisions. *Commonwealth v. Edmunds,* 526 Pa. 374, 388, 586 A.2d 887, 894 (1991). Moreover, this Court has recognized that our Constitution can provide greater rights and protections to the citizens of this Commonwealth than are provided under similar provisions of the Federal Constitution. *Id.* We have stated:

> [T]he federal constitution establishes certain minimum levels which are "equally applicable to the [analogous] state constitutional provision." However, each state has the power to provide broader standards and go beyond the minimum floor which is established by the federal Constitution.

*Id.* (quoting *Commonwealth v. Sell,* 504 Pa. 46, 63, 470 A.2d 457, 466 (1983)). In *Edmunds,* Mr. Justice Cappy, writing for

---

**6.** The Supreme Court acknowledged that the Court could not discern a clear line between six member and five member juries. However, the Court relied on the assembled data which questioned the reliability and appropriate representation of juries smaller than six. *Id.*

the majority of the Court, established the following four part framework which we consider in analyzing our State Constitution:

[L]itigants [must] brief and analyze at least the following four factors:

1) text of the Pennsylvania Constitutional provision;

2) history of the provision, including Pennsylvania case law;

3) related case law from other states;

4) policy considerations, including unique issues of state and local concern, and applicability within modern Pennsylvania jurisprudence.

Depending upon the particular issue presented, an examination of related federal precedent may be useful as part of the state constitutional analysis, not as binding authority, but as one form of guidance. However, it is essential that courts in Pennsylvania undertake an independent analysis under the Pennsylvania Constitution.

526 Pa. at 390–91, 586 A.2d at 895. Therefore, in accordance with *Edmunds,* we will undertake this four part analysis.

### *Analysis*
#### A. Text

The text of Section 6 of Article I of the Pennsylvania Constitution provides as follows:

*Trial by Jury*

Section 6. Trial by jury shall be as heretofore and the right thereof remain inviolate. The General Assembly may provide, however, by law, that a verdict may be rendered by not less than five-sixths of the jury in any civil case.

On its face, Article I, Section 6 preserves the following two things: the right to trial by jury shall be as heretofore; and the right to trial by jury remains inviolate. The Seventh Amendment to the United States Constitution,[7] although

7. The Seventh Amendment provides:

worded differently, is similar to the Pennsylvania provision. On its face, the Seventh Amendment provides the right to trial by jury is preserved and no fact tried by a jury shall be otherwise reexamined other than according to the rules of common law. Although worded differently, both provisions retain the right to trial by jury in civil cases where it existed at common law. Therefore, we must undertake an examination of the history of Section 6 of Article I of our Constitution to determine the meaning of that provision and to decide whether our constitutional scheme is the same as the Federal Constitution or requires a verdict from a twelve member jury in a civil case when a demand for a twelve member jury is properly made.

### B. The History of the Provision

The second element of the *Edmunds* analysis is an examination of the history of the provision, including Pennsylvania case law.

Before discussing any case law, however, we must give an overview of the concept of juries of twelve members throughout this Commonwealth's history. The Superior Court in this case gave an excellent overview of the twelve member jury concept in this Commonwealth. The Superior Court stated:

> [T]he concept of juries of twelve in this Commonwealth ... has its origin in a document introduced and adopted in Pennsylvania in 1682 by William Penn and known as "Laws Agreed Upon in England." Comment, *The Jury Size Question In Pennsylvania: Six Of One And A Dozen Of The Other*, 53 Temple L.Q. 89, 100 (1980).

> Penn's other writings discussed the evolution of the jury and his belief that it was a "fundamental" part of the government and important to a free society. However, "nowhere did he endeavor to explain why a jury required

In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law. U.S. Const. amend. VII

twelve members to fulfill its purpose." *Id.* at 103 (footnote omitted).

One commentator has observed:

> ... Penn's own writings and deeds appear to show that his commitment to twelve-member juries was not based on any reasoned notion that twelve was required to assure fairness, but instead stemming from his adherence to traditional common law principles that required twelve member juries. ...

*Id.* at 104–105 (footnote omitted). Likewise, there is little information available that casts any light on the intent of the framers of the Pennsylvania Constitution of 1776 regarding the size of juries. *Id.* at 106. The same can be said with regard to the Constitutional Conventions of 1790 and 1838. As for the 1873 Convention, discussion was had on the deletion of the unanimity requirement and the elimination of the term "heretofore." Some saw no problem with this since they *equated a trial by jury with a jury of twelve men,* whereas others believed excising the word "heretofore" would pave the way for a jury of " 'three or five or seven ... [or less than twelve] as a constitutional jury....' " *Id.* at 112–113. The proposal was defeated without explanation.

The framers at Pennsylvania's 1968 Convention did not consider the jury provision at all, believing that it was beyond their jurisdiction to affect that right. See Comisky & Krestal, *Analysis of New Judiciary Article,* 40 Pa.B.A.Q. 68, 77 (1968). Even so, our first Constitution of 1776 contained verbiage which has survived and appears in the present-day Article I, § 6. *E.g.,* the 1776 Constitution declared that "trials by jury shall be as *heretofore.*" The Constitution of 1790, and the amended ones of 1838, 1873 and 1968, adopted substantially the same provision. Their language was "trial by jury shall be as *heretofore,* the right thereof remain inviolate."

*Blum v. Merrell Dow Pharmaceuticals, Inc.,* 385 Pa.Super. 151, 162–63, 560 A.2d 212, 217–18 (1989).

As the Superior Court stated, all of our Constitutions have had the identical language, that being "trial by jury shall be as heretofore." The following language was added to Section 6 of Article I of our Constitution by amendment on May 18, 1971:

The General Assembly may provide, however, by law, that a verdict may be rendered by not less than five-sixths of the jury in a civil case.

Subsequently, the Legislature codified the five-sixths rule by passing section 5104 of the Judicial Code, 42 Pa.C.S. § 5104.[8] Subsections 5104(a) and (b) of the Judicial Code provide:

§ 5104. Trial by jury.

(a) **General Rule**—Except where the right to trial by jury is enlarged by statute, trial by jury shall be as heretofore, and the right thereof shall remain inviolate. Trial by jury may be waived in the manner prescribed by general rules.

(b) **Civil verdicts.**—In any civil case a verdict rendered by at least five-sixths of the jury shall be the verdict of the jury and shall have the same effect as a unanimous verdict of the jury.

42 Pa.C.S. § 5104(a), (b).

■ We begin our analysis of the case law by noting that Section 6 of Article I of our Constitution preserves the right to trial by jury in cases where the parties would have had that right at common law. *Rhines v. Clark*, 51 Pa. 96 (1866). In *Rhines*, the plaintiff brought an action at common law to recover damages for detention and loss because a dam built on a river upon which he was traveling prevented him from navigating that river. The trial court dismissed his common law action because a statutory mode of redress, which did not provide for trial by jury, had been supplied for such injuries. The Supreme Court found the statutory remedy inoperative and void and consequently no bar to the plaintiff's action. In so doing, the Court stated:

8. Act of July 9, 1976, P.L. 586, No. 142, § 2 (as amended Apr. 28, 1978, P.L. 202, No. 53, §§ 10(57), 21).

In this respect we think the enactment [of the statute] was palpably unconstitutional. "Trial by jury shall be as heretofore, and the right thereof remain inviolate," has been the voice of all our constitutions and, long before any of them were made, the common law had defined the right of navigating navigable streams, and had provided a jury for assessing damages for the interruption of this right. . . . [F]or obstructing a navigable stream the common law did "heretofore" furnish remedy by jury trials; and therefore, however these remedies may be modified by statute . . . trial by jury must be preserved as an ultimate resort. . . .

*Id.* at 101. Thus, the use of the word "heretofore" in Section 6 of Article I of our Constitution preserves the right to trial by jury in cases where that right existed at common law.

Moreover, a reading of Pennsylvania case law shows that the earliest constitutions in our Commonwealth focused on the preservation of trial by jury, not its extension. *Byers and Davis v. Commonwealth*, 42 Pa. 89 (1862). In *Byers*, the Supreme Court held that where vagrant acts authorizing summary convictions existed prior to the adoption of our first constitution, the language "trial by jury" did not extend to all cases, but rather, to matters as theretofore; thus, people convicted under a newly enacted vagrant act were not entitled to "trial by jury." *Id.* at 96. The Court described the preservation of the right:

Even in England [the mode of trial] was fundamental or constitutional. . . . Its extent and privileges, how and when it was to be enjoyed, were perfectly understood, and in bringing it with them the founders of the Commonwealth doubtless intended to bring it as they had enjoyed it. None of the frame[r]s of government or constitutions under which we have lived have contemplated any extension of the right beyond the limits within which it had been enjoyed previous to the settlement of the state or the adoption of the constitution. No intention to enlarge it appears in the laws agreed upon in England in 1682. Our first constitution, that of 1776, declared that "trials by jury shall be *as heretofore.*" The Constitution of 1790, and the amended one of 1838,

adopted substantially the same provision. Their language was, "trial by jury shall be *as heretofore,* and the right thereof remain inviolate." All looked to preservation, not extension. It is the old right, whatever it was, the one previously enjoyed, that must remain inviolable, alike in its mode of enjoyment and in its extent.

*Id.* at 94.

Section 6 of Article I of our Constitution secures the right to trial by jury in its accustomed form before rights of person and property shall be finally decided, but does not limit the power of the legislature to furnish modes of civil procedure in courts of justice. *Haines v. Levin,* 51 Pa. 412, 414 (1866). In *Haines,* the Supreme Court held that the Act of 1863 was constitutional where it sufficiently secured to the tenant an appeal and trial by jury. The landlord in that case proceeded under the Act of December 14, 1863, to recover possession of leased property. In determining that the Act did not infringe upon the right of trial by jury the Supreme Court stated:

> [T]he right of trial as it then existed was secured, and the trial itself protected from innovations which might destroy its utility and its security as a palladium of the liberties of the citizen. But beyond this point there is no limitation upon legislative power in constructing modes of redress for civil wrongs, and regulating their provisions.

*Id.* Thus, we must determine what the right to trial by jury in its accustomed form is.

In discussing the meaning of the language "trial by jury shall be as heretofore" in Section 6 of Article I of our Constitution, this Court has stated that one of the substantial features of a "trial by jury" is that the jury shall consist of twelve.[9] Justice Mitchell discussed these features in *Smith v.*

---

**9.** The other substantial feature was that the jury's verdict must be unanimous in civil and criminal cases. However, by the authority of the language added to Article I, Section 6 by constitutional amendment in 1971, the General Assembly replaced the unanimity requirement in civil cases with the five-sixths rule of subsections 5104(a) and (b) of the Judicial Code, 42 Pa.C.S. § 5104(a), (b).

*Times Publishing Co.*, 178 Pa. 481, 36 A. 296 (1897) (Mitchell, J.). In *Smith*, the Supreme Court analyzed whether the Act of 1891 authorizing the Supreme Court to review alleged excessive jury verdicts was unconstitutional because it infringed upon the right to trial by jury. The Court in *Smith* reversed the trial court and held that the Act of 1891 did not infringe upon one's right to trial by jury and, in so doing, Justice Mitchell discussed the substantial elements of the right of trial by jury.

The provision of the constitution is that

"trial by jury shall be as heretofore, and the right thereof remain inviolate." ... [I]n the constitution ... the phrase "shall be as heretofore" refers to the method of trial itself, and means that it shall be preserved with its substantial elements, while the second phrase, "the right thereof remain inviolate," refers to the right to a jury trial before the *final* decision in all cases where it would have existed at the time of the adoption of the constitution.... "Trial by jury is by 12 free and lawful men who are not of kin to either party, for the purpose of establishing the truth of the matter in issue...." [A]ll the authorities agree that the substantial features [of a jury], which are to be "as heretofore," are the number, 12, and the unanimity of the verdict. These cannot be altered, and the uniform result of the very numerous cases growing out of legislative attempts to make juries of less number, or to authorize less than the whole to render a verdict, is that, as to all matters which were the subject of jury trials at the date of the constitution, the right, which is to remain inviolate, is to a jury, "as heretofore," of 12 men, who shall render a unanimous verdict. Matters not at that time entitled to a jury trial, and matters arising under subsequent statutes prescribing a different proceeding, are not included. "The constitutional provisions do not extend the right. They only secure it in cases in which it was a matter of right before. But, in doing this, they preserve the historical jury of 12 men, with all its incidents."

*Id.* at 498–99, 36 A. at 297 (citations omitted). Thus, it is clear from *Smith* that one substantial feature of "trial by jury" is that it is made up of twelve jurors.

The substantial features of "trial by jury" were also discussed in *Commonwealth v. Collins*, 268 Pa. 295, 110 A. 738 (1920). In *Collins*, the defendant was convicted of a murder that occurred approximately 644 feet from the line dividing two counties. The defendant alleged that if sections 48 and 49 of the Act of 1860 are construed as allowing trial upon indictment in one county for an offense shown to have been committed in an adjoining county, then both sections of the Act violate the provisions of the Constitution which guarantee that "trial by jury shall be as heretofore," and that an accused has a right, in prosecutions by indictment, to a trial by a "jury of the vicinage." In affirming the trial court and holding that the sections of the Act did not violate the Constitution, the Court found that under these sections, a 500–yard strip on the boundary of two or more counties becomes part of the vicinage or neighborhood in which the crime was committed; thus, the state may prosecute and try the offender in either county. *Id.* at 302, 110 A. at 740. In its analysis of the exceptions argued in the matter, the Court in *Collins* also discussed the meaning of the language in our Constitution "trial by jury shall be as heretofore."

> These constitutional guaranties are reenactments of similar provisions in the Constitutions of 1790 and 1838. The provision that trial by jury shall be as heretofore and the right thereof remain inviolate has been a fundamental principle in this State from the time of Penn's Charter ...; it was embodied in the Constitution of 1776, and appears ipsissimis verbis in the Constitutions of 1790 and 1838. *Its meaning is that a jury shall continue to be the tribunal for the determination of all questions of fact in controversies between individuals and in actions and prosecutions brought by the Commonwealth, its substantial feature being that the jury shall consist of twelve good and lawful men, whose verdict must be unanimous.*

*Id.* at 299, 110 A. 738–739 (citations omitted) (emphasis add-

ed).[10] Clearly, our case law indicates that "trial by jury" means a jury of twelve persons.

Appellants argue that there is no rationale in 1991 for following the dicta of cases which commented upon the "heretofore" language in our earlier Constitutions. They submit that the substantial features of "trial by jury shall be as heretofore," as discussed in *Smith*, have already changed; therefore, *Smith* is not dispositive and does not serve as guidance to this Court in deciding this appeal. We disagree.

Every Constitution of this Commonwealth has guaranteed to the parties a verdict from a jury of twelve persons where the parties would have had that right at common law. The Constitution, beginning in 1776, has always provided that "trial by jury shall be as heretofore." As stated above, our history and our case law evidence that that language, "trial by jury shall be as heretofore," was understood to guarantee a jury of twelve persons. Thus, Appellants' statement that there is no rationale in 1991 for following *Smith* and the other cases which commented upon the "heretofore" language in our earlier Constitutions is incorrect.

Appellants are also wrong in their argument that *Smith* is not dispositive because the substantial features of a jury have changed. Appellants are correct when they state that the "unanimity" feature has changed. The people of this Commonwealth, by constitutional amendment in 1971, altered the unanimity requirement by authorizing the General Assembly to provide by law that a verdict may be rendered by not less than five-sixths of the jury in any civil case. The General Assembly then promulgated the five-sixths verdict in subsection 5104(a) and (b) of the Judicial Code, 42 Pa.C.S. § 5104(a), (b). The unanimity feature, therefore, was changed.

However, Appellants' statement that the other substantial feature, twelve free and lawful *men*, has changed is incorrect. Appellants emphasize that this Court changed the "men" requirement in *Commonwealth v. Maxwell*, 271 Pa. 378, 114

10. *Accord Commonwealth v. Eckhart*, 430 Pa. 311, 242 A.2d 271 (1968); *Commonwealth v. Fugmann*, 330 Pa. 4, 198 A. 99 (1938).

A. 825 (1921), when it decided that women were eligible to serve as jurors. However, Appellants' reliance in this appeal on *Maxwell* which changed the qualifications to be a juror is misplaced. The substantial feature of "trial by jury" is the number twelve. Gender, contrarily, is a qualification of jurors which is controlled by the legislature. *See Maxwell,* 271 Pa. 378, 388–89, 114 A. 825, 828–29 (1921).[11] Thus, this Court in *Maxwell* did not change a substantial feature of "trial by jury shall be as heretofore" when it determined that women could serve as jurors; rather, the change involved juror qualifications which did not implicate the constitutional right to trial by jury. Therefore, the substantial feature, the number twelve, was not altered and remains "as heretofore."[12]

Appellants also argue, assuming *arguendo* that a right to a twelve person jury exists, the 1971 Pennsylvania Constitution and the subsequently enacted five-sixths rule, 42 Pa.C.S. § 5104(b), allow that a decision by ten of twelve jurors constitutes "the verdict of the jury" and it "shall have the same effect as a unanimous verdict of the jury." Appellants' Brief at 34. Therefore, Appellants aver that the decision of ten jurors is always constitutionally sufficient and no constitutional right in this appeal could have been violated where eleven of eleven jurors agree on a verdict.

 When the people of this Commonwealth amended Section 6 of Article I of our Constitution in 1971, authorizing

11. In holding that women were eligible to serve as jurors, the Court stated:

> "[A]ll the authorities agree that the substantial features which, are to be "as heretofore" are the number twelve and the unanimity of the verdict. . . . [O]ther changes, such as the qualifications of the jurors themselves, the vicinage from which they shall come, the mode of selecting and summoning them, the regulation of venires, and notably, even the matter of challenges . . . have been held to be within legislative control."

*Id.* 271 Pa. 378 at 385, 114 A. at 827 (quoting *Smith v. Times Publishing Co.,* 178 Pa. 481, 499, 36 A. 296, 297 (1897)).

12. As discussed in Section D, Policy Considerations, *infra,* we are of the opinion that a constitutional amendment is required to change the substantial feature of the number twelve as was required to change the unanimity feature.

the General Assembly to provide for a verdict by not less than five-sixths of the jury in any civil case, they reaffirmed the constitutional right to a jury of twelve persons. A provision of the Constitution will be interpreted, not in a strained or technical manner, but as understood by the people who adopted it. *Firing v. Kephart,* 466 Pa. 560, 565, 353 A.2d 833, 835 (1976). As previously discussed, in this Commonwealth "trial by jury shall be as heretofore" has always required a jury of twelve persons. When the people of this Commonwealth approved the May 18, 1971 amendment to Section 6 of Article I, they understood the reference to "the jury in any civil case" to be to a jury of twelve persons. Thus, the people of this Commonwealth amended only the unanimity feature and reaffirmed that a jury is made up of twelve persons.

■ While it is true that under subsection 5104(b) five-sixths of the jury shall be the verdict of the jury and shall have the same effect as a unanimous verdict of the jury, this in no way means that a verdict may be reached by a jury consisting of less than the constitutionally mandated twelve person jury where a demand for such is properly made. It is a logical assumption that if twelve jurors had deliberated in this matter, the five-sixths verdict might never have been reached. Moreover, an entirely different verdict may have been arrived at. Obviously, this would depend upon the leadership and persuasive abilities of the one juror who did not participate in the deliberations. Thus, our history and case law indicate that Section 6 of Article I of the Pennsylvania Constitution requires a twelve person jury where properly demanded, and that five-sixths of the jury shall be the verdict of the jury and shall have the same effect as a unanimous verdict of the jury.

## C. Related Case Law from Other States

The third element we will analyze is the case law from other jurisdictions.[13] Subsequent to the United States Supreme

13. We note Appellants have not presented related case law from other states. However, we analyze certain case law from other jurisdictions since it supports our analysis.

Court decisions, a number of states other than Pennsylvania confronted the issue of whether their state constitutions require a twelve person jury.

The highest courts of at least three states—Indiana, Iowa and Kansas—have held that their constitutions do not require twelve person juries. *See In the Matter of Public Law No. 305 and Public Law No. 309 of the Indiana Acts of 1975*, 263 Ind. 506, 334 N.E.2d 659 (1975); *Pitcher v. Lakes Amusement Co.*, 236 N.W.2d 333 (Iowa 1975); *Bourne v. Atchison, Topeka and Santa Fe Ry.*, 209 Kan. 511, 497 P.2d 110 (1972). Conversely, the highest courts of at least four other states—Alabama, Illinois, Mississippi and Rhode Island—have held that their constitutions require twelve person juries. *See Gilbreath v. Wallace*, 292 Ala. 267, 292 So.2d 651 (1974); *Hartgraves v. Don Cartage Co.*, 63 Ill.2d 425, 348 N.E.2d 457 (1976); *Brame v. Garwood*, 339 So.2d 978 (Miss.1976); *Advisory Opinion to the Senate of the State of Rhode Island and Providence Plantations*, 108 R.I. 628, 278 A.2d 852 (1971).[14] A tally of the states that have decided this issue is not dispositive of the issue in Pennsylvania. *See Commonwealth v. Edmunds*, 526 Pa. at 400, 586 A.2d at 900. However, certain of those cases support our analysis under the Pennsylvania Constitution.

The Alabama Supreme Court held that in cases where the right to jury is preserved inviolate by Article I, Section 11 of the Alabama Constitution of 1901, a jury of twelve is required. *Gilbreath v. Wallace*, 292 Ala. 267, 292 So.2d 651 (1974). In *Gilbreath*, an Act providing for a six-member jury was applied to a will contest. However, Article I, Section 11 of the Alabama Constitution of 1901 provides "[t]hat the right of trial by jury shall remain inviolate." The Alabama Supreme Court, in holding that a jury of twelve persons is required where the right to trial by jury is preserved, reasoned that "[w]hile the Federal Constitution ... establishes minimum standards, the states have the power and are free to provide greater safe-

14. For an analysis of the relevant constitutional provision of these seven states, see, Comment, The Jury Size Question In Pennsylvania: Six Of One And A Dozen Of The Other, 53 Temple L.Q. 89, 91 n. 16 (1980).

guards and to extend this protection through their own organic law—the State Constitutions." *Id.* at 271, 292 So.2d at 654–55. That Court described the following basic principles of constitutional juries in Alabama:

> The crucial words which control these principles are "shall remain inviolate." To provide that the right of trial by jury shall remain inviolate is to forbid the state through the legislative, judicial, or executive department—one or all—from ever burdening, disturbing, qualifying, or tampering with this right to the prejudice of the people.... Historically, a jury ... has consisted of 12 people selected from the community in which the trial is to be held.

*Id.* at 271–72, 292 So.2d at 655 (citation omitted). The Court was not persuaded by the United States Supreme Court decisions in *Williams* and *Colgrove* to abandon its case law and constitutional history. In refraining from adopting the *Williams* and *Colgrove* analysis, the Court stated that "[i]t must be remembered that our duty is to speak the will of the people of this state, as that will is embodied in Section 11 of the Alabama Constitution of 1901." *Id.* at 272, 292 So.2d at 656. Thus, the Supreme Court of Alabama refused to part with its constitutional history and case law, and determined that juries of twelve people are constitutionally required.

Most significantly, after the United States Supreme Court decision in *Williams,* the Supreme Court of Rhode Island, in an advisory opinion to the Senate, held that the jury referred to in Section 15 of Article I of the Rhode Island Constitution [15] requires a panel of twelve. *Advisory Opinion to the Senate of the State of Rhode Island and Providence Plantations,* 108 R.I. 628, 278 A.2d 852 (1971). After a thorough analysis of Rhode Island's constitutional history, that court reasoned:

> Although the Supreme Court in *Williams* described the common-law requirement that a petit jury be composed of precisely twelve people as an "historical accident," the Court obviously could not share this observation made in June 1970 with the framers and adopters of the Rhode Island

15. Article I, Section 15 of the Rhode Island Constitution provides: "The right of trial by jury shall remain inviolate."

Constitution. Accident or not, it is our firm belief that in 1842 when the draftsmen and the voters said that the right to a jury trial was to remain inviolate, they were extending to an accused, or any litigant who might be entitled to a jury trial, the immutable right to have his case considered in the courts of this state by petit jury composed of exactly twelve persons.

*Id.* at 640, 278 A.2d at 858. Thus, the Rhode Island Supreme Court, after analyzing its case law and constitutional history, went above the minimum standards set forth by the United States Supreme Court in *Williams* and determined that, under the Rhode Island Constitution, a jury is composed of twelve members.

We similarly conclude that, because of Pennsylvania's history and case law, a jury must be composed of twelve persons where that right existed at common law and the demand for a twelve person jury is properly made. If this Court changed a right that had been understood and guaranteed to the people of this Commonwealth for over 200 years, we would be breaching our duty to speak the will of the people of this Commonwealth. We refuse to breach that duty by allowing a jury to be composed of less than twelve jurors. Only the people of this Commonwealth, by constitutional amendment, may make such a change.

### D. Policy Considerations

The last prong of the *Edmunds* test is an examination of policy considerations and their applicability within modern Pennsylvania jurisprudence. One policy consideration Appellants request us to consider is the financial burden a jury of twelve persons presents for this Commonwealth.

Appellants argue that the financial and social costs of imposing a twelve person deliberative jury requirement cannot be justified in the operation of the courts of this Commonwealth and in the Court of Common Pleas of Philadelphia County. We are aware that the financial burden on the Commonwealth and its counties to ensure a twelve member jury to a party who is entitled to and properly demands such is a substantial

one. However, financial burden is of no moment when it is weighed against a constitutional right. If the citizens of this Commonwealth are concerned about the financial burden juries of twelve people present for the Commonwealth and its counties, the citizens may solve the problem by amending the Pennsylvania Constitution to allow juries to be composed of less than twelve.[16]

We find that the most substantial policy consideration is that the people of this Commonwealth have understood since our first Constitution was adopted in 1776 that a "trial by jury" meant a jury composed of twelve persons. Given that understanding of the constitutional right, it is not for the legislative, executive, or judicial branch to change that right; rather, it is exclusively left to the people of this Commonwealth to amend the twelve member jury requirement if they desire that change.

## Conclusion

Our constitutional history and case law mandate that we refrain from adopting the United States Supreme Court analysis in *Williams, Colgrove,* and *Ballew,* which held that verdicts from juries of less than twelve did not violate the Federal Constitution. This Court is under a duty to guarantee that the intent of the people of this Commonwealth in adopting the Pennsylvania Constitution is carried forward. We are convinced that, when Pennsylvania adopted its first Constitution in 1776, the framers assumed that a jury meant twelve persons. This Court has repeatedly adopted that view. *See, e.g., Commonwealth v. Collins,* 268 Pa. 295, 110 A. 738 (1920); *Smith v. Times Publishing Co.,* 178 Pa. 481, 36 A. 296 (1897). Therefore, even though Section 6 of Article I of the Pennsylvania Constitution does not explicitly state that a jury is constituted of twelve members, our constitutional history and

16. Appellants also argue that the principles of fairness and equity dictate that a unanimous eleven person jury verdict in the absence of a showing of prejudicial error is valid. However, as previously stated, the one missing juror may have had the persuasive ability which may have resulted in an entirely different verdict. Thus, because Merrell Dow was denied a constitutionally mandated twelve person jury that it properly requested, Merrell Dow was prejudiced.

case law make it apparent that "trial by jury" means a jury of twelve persons.

It is clear from this Commonwealth's history and case law that our Constitution in 1776 meant "trial by jury" was a jury of twelve. Moreover, that constitutional guarantee has been consistently reaffirmed by the people of this Commonwealth and the only way to change it is by constitutional amendment. Thus, the people of this Commonwealth exclusively have the power to reduce the number of people required by our Constitution to constitute a jury.

In the instant case, Merrell Dow was deprived of its constitutional right of trial by jury when the trial judge overruled its Motion for Mistrial and proceeded to verdict with only eleven jurors, after one juror became ill. Section 6 of Article I of the Pennsylvania Constitution entitles Merrell Dow to a verdict from a jury of twelve persons where a twelve person jury was properly demanded and was available at common law.

Accordingly, we affirm the Order of the Superior Court which reversed the Court of Common Pleas and remanded for a new trial.

Justice McDERMOTT did not participate in the consideration or decision of this case.

Justice LARSEN files a concurring opinion in which Justice PAPADAKOS joins.

LARSEN, Justice, concurring.

I concur in the result reached by the majority; I believe, however, that the rationale employed by the majority in reaching that result is not appropriate in this case.

In *Commonwealth v. Edmunds,* 526 Pa. 374, 586 A.2d 887 (1991), this Court stated that, *as a general rule,* it is important that litigants brief and analyze certain factors in each case implicating a provision of the Pennsylvania Constitution. Such factors are intended to assist the courts in Pennsylvania in undertaking an independent analysis of a provision of the

Pennsylvania Constitution, vis-a-vis the United States Constitution.

The sole issue on appeal in this case is whether Article I, § 6 of the Pennsylvania Constitution entitles a party who demands a twelve person jury to a verdict from a twelve person jury. Once it is established that the minimum guarantees afforded by the United States Constitution are met, the focus of this appeal is Article I, § 6 of the Pennsylvania Constitution. The instant issue is resolved by interpreting the following language from Article I, § 6: "trial by jury shall be as heretofore"; this language has been included in every Pennsylvania Constitution since 1776. Where the words in the Constitution are plain, they must be given their common meaning. *Breslow v. School Dist. of Baldwin Twp.*, 408 Pa. 121, 182 A.2d 501 (1962). Interpretations of related case law from other states or policy considerations involving issues of state and local concern are irrelevant to a determination by this Court of what the citizens of Pennsylvania understood these words to mean when they adopted Article I, § 6 of their Constitution.

The extended four-part analysis set out in *Edmunds* is appropriate only when there is a question of whether our constitution provides a source of individual rights which is alternative to and independent of rights guaranteed by the United States Constitution. Here, appellant grounds his claim only upon Article I, § 6 of the Pennsylvania Constitution. It is unnecessary, therefore, to subject this case and, indeed, every case involving a provision of the Pennsylvania Constitution to the four-part *Edmunds* analysis as a matter of course.

Justice PAPADAKOS joins in this concurring opinion.