J-S39030-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| FOFEE SAYON, | |
| Appellant | No. 55 EDA 2015 |

Appeal from the PCRA Order December 9, 2014
In the Court of Common Pleas of Chester County
Criminal Division at No(s): CP-15-CR-0004236-2011

BEFORE:  BOWES, J., OTT, J., and MUSMANNO, J.

MEMORANDUM BY OTT, J.:                              **FILED OCTOBER 14, 2015**

Fofee Sayon appeals from the order entered December 9, 2014, in the Chester County Court of Common Pleas, dismissing his first petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541 *et seq*. Sayon seeks relief from the judgment of sentence of an aggregate 18 to 48 months' imprisonment, followed by 10 years' probation, imposed on December 13, 2012, after his jury conviction of institutional sexual assault (two counts), corruption of minors (two counts), unlawful contact with minors (two counts), and endangering the welfare of a child.[1]  His sole claim on appeal asserts trial counsel's ineffectiveness for failing to adequately

_____

[1]  18 Pa.C.S. §§ 3124.2, 6301(a)(1), 6318(a)(1), and 4304(a)(1), respectively.

consult with him before agreeing to proceed with a verdict decided by only 11 jurors. Based on the following, we vacate the order denying PCRA relief, and remand for a new trial.

The facts underlying Sayon's conviction were summarized by this Court in a prior appeal as follows:

> In 2010, [Sayon] . . . was employed as a residential counselor at the Devereux Foundation in Malvern, Chester County, Pennsylvania. The Devereux Foundation is a residential facility licensed by the State of Pennsylvania, and provides treatment for children with behavioral and emotional disorders. Approximately seventy-five girls between the ages of eight and eighteen live at the Malvern facility. The average stay for the girls at the facility is between nine and twelve months.
>
> Employees of Devereux receive training regarding professional boundaries between staff and residents. Absolutely no sexual contact of any kind is permitted between an employee and a resident of Devereux, including after the resident has been discharged from the facility. Prior to beginning his employment at Devereux, [Sayon] was notified of this policy in writing, and signed an acknowledgment that he had read and understood the policy.
>
> Beginning in June, 2010, sixteen[-]year-old M.W. was a resident in treatment at the Devereux Foundation. While in residence, M.W. confessed to Victoria Jackson, program manager at Devereux and [Sayon's] supervisor, that she had a crush on [Sayon]. Ms. Jackson informed [Sayon] of this crush, and stressed to him the importance of maintaining a "safe distance."
>
> On October 22, 2010, M.W. met with Devereux's senior program manager, Kenyatta Smith, and informed Ms. Smith that [Sayon] had been making advances towards her. M.W. told Ms. Smith [that] she and [Sayon] had kissed in the past, but that she didn't want it to happen [anymore]. Later, M.W. admitted that, when out of the view of other residents, she and [Sayon] had kissed each other several times. During these episodes [Sayon] also grasped M.W.'s breasts or buttocks, and attempted to put his hands down her pants. M.W. also stated that [Sayon]

- 2 -

had also asked M.W. to engage in vaginal and oral sex, and had used gestures to indicate to her his desire for oral sex.

*Commonwealth v. Sayon*, 87 A.3d 371 [225 EDA 2013] (Pa. 2013) (unpublished memorandum at 1-2) (citation omitted).

Sayon was arrested and charged with the above-listed offenses. The case proceeded to a jury trial. After the jury retired to deliberate, they sent a note to the trial court requesting how to proceed "if one juror did not hear some of the testimony and has a language barrier[.]" N.T., 6/28/2012, at 126. Thereafter, the following exchange took place:

> THE COURT: … Suggestions counsel? We could go with 11 if everybody agrees.
>
> [Commonwealth]: I wouldn't have a problem with that, your Honor.
>
> THE COURT: Defense?
>
> [Defense Counsel]: I would be fine with that, your Honor.
>
> THE COURT: I'll ask the jury to come in, please. And then I'll ask the foreman to identify the – actually, yes, I'll ask the foreman to identify the juror who has the problem. I'll then excuse that juror and tell the jury to go back and deliberate with 11.
>
> And, Mr. Sayon, do you agree with that response that your lawyer gave for the 11 to decide this case?
>
> [Sayon]: Yes, your Honor.
>
> THE COURT: Thank you, very much. That is the way we'll proceed.

*Id.* at 126-127.

The court then dismissed juror number eight after the juror acknowledged he did not hear some of the testimony, and instructed the

jury to resume deliberations. The jury later returned with its verdict of guilty on all charges.

On December 13, 2012, Sayon was sentenced to an aggregate term of 18 to 48 months' imprisonment, followed by 10 years' probation.[2] His judgment of sentence was affirmed by a panel of this Court on appeal. **See Sayon**, **supra**. On April 25, 2014, Sayon filed a timely, counseled PCRA petition raising numerous claims asserting the ineffectiveness of trial counsel. The PCRA court conducted an evidentiary hearing, and on December 9, 2014, entered an order denying Sayon's PCRA petition. This timely appeal follows.[3]

Our standard of review is well-established:

> Our standard of review of an order denying PCRA relief is whether the record supports the PCRA court's determination and whether the PCRA court's decision is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record.

_____

[2] Prior to sentencing, the trial court ordered Sayon to undergo an assessment by the Sexual Offenders Assessment Board ("SOAB") to determine if he met the criteria for classification as a sexually violent predator under the Sexual Offenders Registration and Notification Act ("SORNA"), 42 Pa.C.S. §§ 9799.10-9799.14. The SOAB evaluator determined Sayon did not meet the criteria for classification as a sexually violent predator. **See** N.T., 12/13/2012, at 3.

[3] On January 5, 2014, the PCRA court ordered Sayon to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Sayon complied with the court's directive, and filed a concise statement on January 20, 2014.

*Commonwealth v. Lawson*, 90 A.3d 1, 4 (Pa. Super. 2014) (internal citations omitted).

Sayon's sole issue on appeal involves the ineffective assistance of trial counsel.

> In order to obtain relief on a claim of counsel ineffectiveness, a PCRA petitioner must satisfy the performance and prejudice test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In Pennsylvania, we have applied the *Strickland* test by requiring that a petitioner establish that (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability that the result of the proceeding would have been different. *Commonwealth v. Pierce*, 567 Pa. 186, 786 A.2d 203, 213 (2001). Counsel is presumed to have rendered effective assistance, and, if a claim fails under any required element of the *Strickland* test, the court may dismiss the claim on that basis. *Commonwealth v. Ali*, 608 Pa. 71, 10 A.3d 282, 291 (2010).

*Commonwealth v. Reid*, 99 A.3d 470, 481 (Pa. 2014).

Sayon asserts trial counsel was ineffective for failing to adequately consult with him before agreeing to continue deliberations with only 11 jurors. He states counsel did not "adequately advise … [him] as to his choices and the ramification of his choices." Sayon's Brief at 12. Further, Sayon emphasizes trial counsel testified during the PCRA hearing that he was unaware he could request a mistrial, but that "had he known that a mistrial was a possibility then he would have recommended to … Sayon that he request and then receive a mistrial." *Id.* Accordingly, Sayon asserts

counsel's decision to proceed with 11 jurors had no "sound legal basis," and that he was prejudiced by counsel's ineffectiveness. *Id.* at 12-13.

"It is clear from this Commonwealth's history and case law that our Constitution in 1776 meant 'trial by jury' was a jury of twelve." *Blum by Blum v. Merrell Dow Pharm., Inc.*, 626 A.2d 537, 549 (Pa. 1993) (reversing judgment and remanding for new trial when trial court overruled defendant's request for mistrial after one juror became ill). Nevertheless, there are circumstances in which a criminal defendant may waive this right, and proceed to verdict with fewer than 12 jurors. Pennsylvania Rule of Criminal Procedure 641 provides:

> In all cases, at any time after a jury of 12 is initially sworn and before verdict, **the defendant and the attorney for the Commonwealth, with approval of the judge, may agree to a jury of fewer than 12 but not fewer than 6.** Such agreement shall be made a part of the record. The verdict in such a case shall have the same force and effect as a verdict by a jury of 12.

Pa. R. Crim. P. 641 (emphasis supplied).

Here, the PCRA court determined the requirements of Rule 641 were fulfilled, and that Sayon failed to demonstrate counsel was ineffective. The court opined:

> In denying his PCRA [petition], we found [Sayon] had failed to argue or establish how he was actually prejudiced by his attorney's actions. We also found that [Sayon] failed to establish counsel ineffectiveness which "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii). We noted that both [Sayon] and his attorney did agree, on the record, to proceed with eleven jurors, and thus the

- 6 -

requirements of Pa.R.Crim.P. 641 were satisfied. We also found no additional colloquy was required by Rule 641 or by caselaw, before trial could proceed. ***Commonwealth v. Stewart***, 448 A.2d 598, 600 (Pa. Super. 1982)[, *aff'd*, 460 A.2d 756 (Pa. 1983)]. Finally, we noted that even had a mistrial been granted, trial counsel acknowledged that the evidence presented at any new trial would have been the same as that offered in the instant case, and this Court had already reviewed and found meritless [Sayon's] claim on [direct] appeal that the evidence at trial was insufficient to sustain his convictions. See: Opinion Pursuant to Pa.R.A.P. 1925(a), 3/6/13, pp. 3-6; N.T. 7/22/14, p. 27. Thus, [Sayon] had failed to successfully rebut the presumption that his counsel was effective.

PCRA Court Opinion, 2/2/2015, at 3-4.

Based on our review of the record, the parties' briefs, and the relevant case law we disagree with the PCRA court's analysis. This Court's decision in ***Stewart***, ***supra***, is instructive.

In ***Stewart***, on the final day of trial, one of the jurors declined to appear for service. The proceedings continued without objection until after the verdict was entered. On appeal, the defendant, relying on Pa.R.Crim.P. 1103 (the predecessor to Rule 641), first argued the trial court erred in continuing the trial without his agreement. However, this Court found that a challenge to the number of jurors may be waived when a defendant fails to object. ***Stewart***, ***supra***, 448 A.2d at 600. Furthermore, the ***Stewart*** Court held that when a defendant agrees to proceed with fewer than 12 jurors (or fails to object when the court so proceeds), "[t]here is **no requirement** that the court engage in a colloquy." ***Id.*** (emphasis supplied). Therefore, the ***Stewart*** Court concluded that the defendant "waived his right to attack the numerical composition of his jury in this appeal." ***Id.*** at 601.

Nevertheless, in his second claim, the defendant argued trial counsel was ineffective for failing to object to the jury's composition. With regard to this particular claim, the **Stewart** Court remanded for an evidentiary hearing. The Court opined:

> We are unable to determine from the record whether trial counsel had any reasonable basis for failing to object to the numerical composition of the jury under Rule 1103. Accordingly, we are obliged to vacate the judgment of sentence and remand for an evidentiary hearing. **Commonwealth v. Hubbard**, 272 Pa. 259, 278, 372 A.2d 687, 696 (1977); **Commonwealth v. Twiggs**, 460 Pa. 105, 106, 111, 331 A.2d 440, 443 (1975). If the trial court finds that counsel was ineffective, then it shall permit Stewart to file a Rule 1103 objection *nunc pro tunc*. If appellant is unable to sustain his contention that counsel was ineffective, then the judgment of sentence should be reimposed.

**Id.** (footnote omitted).

Here, Sayon contends trial counsel was ineffective for failing to properly advise him of his right to proceed with 12 jurors, and for failing to request a mistrial when the trial court chose to proceed with only 11 jurors. Turning to the ineffectiveness test, we conclude this claim has arguable merit. Even though **Stewart** emphasizes that a trial court need not engage in a full colloquy with a defendant to determine if his decision to proceed with a jury of less than 12 is knowing and voluntary, it does **not** stand for the proposition that **counsel has no obligation** to provide his client with the information necessary to make an informed decision as to whether to proceed. Indeed, Sayon had the option to decline the trial court's "suggestion" to proceed with 11 jurors and request a mistrial. Based on the

testimony at the PCRA hearing, his trial counsel was not aware of this option, and, therefore, neither was Sayon.

Specifically, Sayon testified that (1) he did not know he could have requested a mistrial rather than proceed with 11 jurors; (2) trial counsel did not consult with him before the court asked him if he wanted to proceed; (3) he agreed to proceed because his "legal representation" had already agreed; (4) when he later asked counsel "if you proceed, what would be the next outcome," counsel responded, "it's up to the jury[;]" and (5) had he known he could have requested a mistrial, he would have. N.T., 7/22/2014, at 16-18. Trial counsel confirmed that his own decision to agree to proceed with 11 jurors involved "no thought process" and no consultation with his client. *Id.* at 24. In fact, counsel admitted he "did not realize that [they] had a right to have a mistrial in this case." *Id.* at 28. Counsel explained:

> … I also do civil work, and sometimes there are 8 or 6 jurors. I never had the situation come up where after the alternates had left, then there was a problem with a juror, and I didn't really understand what the consequences of that might have been.

> * * * *

> Well, I understand that there are 12 jurors which is the standard and that's what's supposed to happen. I totally understand that. There's not a question about that in my mind at all.

> * * * *

> The question is, what happens if one of [the 12 jurors] at the very last minute is unable to serve. Does that mean the whole thing is a mistrial. That I didn't know the case law on. That is a legal point of the case law. It's not something that says –

there's not something in the law that says if there's – if there's not 12 jurors then it must be a mistrial. That's a case law issue and I did not know the case law.

*Id.* at 31-32.

Furthermore, pursuant to the second ineffectiveness prong, trial counsel's testimony at the PCRA hearing demonstrates that counsel had no reasonable basis for his failure to request a mistrial, rather than proceed with 11 jurors. First, as noted above, counsel conceded he "did not know the case law" and was unaware he could request a mistrial. *Id.* Second, counsel testified that if he had the time to think through the issue, he "probably would have recommended to Mr. Sayon to have a mistrial[.]" *Id.* at 26. Counsel explained he was "totally beat up by the [trial] judge," and, in fact, had been held in contempt before the jury and admonished "10 to 15 times" during the trial. *Id.* at 26, 37. *See* N.T., 6/27/2012, at 20, 39-40, 49-51. Counsel further stated "I just felt like it might have been better for Mr. Sayon to have a situation where he didn't have to have his attorney look so bad." *Id.* at 26. Therefore, counsel admitted, himself, that he had no strategic basis for his failure to request a mistrial, rather than to proceed with 11 jurors during deliberations.[4]

_____

[4] We note the Commonwealth asserts trial counsel's PCRA hearing testimony "was merely trial counsel's act of pretending he was unaware of the options at trial when a juror was excused" and that counsel "was attempting to basically agree to his own ineffectiveness." Commonwealth's Brief at 13. However, when, as here, the PCRA court has not determined counsel's testimony to be incredible, and the record contains no reason why counsel

*(Footnote Continued Next Page)*

Lastly, with regard to the third ineffectiveness prong, we conclude Sayon demonstrated he was prejudiced by counsel's actions. Had Sayon not agreed to proceed with 11 jurors, the trial court would have been compelled to declare a mistrial. Furthermore, had the court declared a mistrial, the outcome of the proceedings could have been different. ***Reid***, ***supra***. Contrary to the PCRA court's contention, Sayon was not required to demonstrate that a new trial would result in a not guilty verdict.[5] Rather, it was sufficient for Sayon to establish that he "wanted the mistrial, the trial court would have granted it, and therefore, but for [trial counsel's] actions, the result of the proceeding would have been different." ***Commonwealth v. Jones***, 871 A.2d 1258, 1261 (Pa. Super. 2005).[6] Sayon could not be

*(Footnote Continued)* ─────────────

would lie on the stand, we decline to "look with disfavor" on trial counsel's concession that he had no reasonable basis for his actions. ***Id.***

[5] We note the PCRA court found no prejudice because the evidence, which would remain the same on retrial, was sufficient to support the verdict. ***See*** PCRA Court Opinion, 2/2/2015, at 4. However, the entire case depended upon the jury's credibility assessment of Sayon, who testified and denied the allegations, versus that of the victim and her friend, who claimed to have observed some inappropriate conduct, albeit none of the alleged physical conduct. ***See*** Trial Court Opinion, 3/16/2013, at 4-6. Therefore, the substitution of one juror could have altered this credibility determination, and, ultimately, the verdict.

[6] In ***Jones***, the appellant asserted trial counsel was ineffective "for failing to move for a mistrial regarding an improper communication with a juror, and for failing to communicate this issue" to the appellant. ***Jones***, ***supra***, 871 A.2d at 1260. When the issue was brought to the court's attention, the court questioned all of the jurors about the incident. Thereafter, co-defendant's counsel declined a mistrial and the appellant's counsel that day, who was substituting for appellant's regular counsel, followed his lead and

*(Footnote Continued Next Page)*

- 11 -

compelled to proceed with less than 12 jurors. If he had declined the court's suggestion to continue deliberations with only 11 jurors, the court would have had to declare a mistrial.

Accordingly, because we conclude Sayon has demonstrated trial counsel's ineffectiveness in failing to advise him to request a mistrial when one juror had to be dismissed, we vacate the order denying PCRA relief, and remand for a new trial.

Order vacated. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/14/2015

_(Footnote Continued)_ —————————

did the same. *Id.* at 1261 On appeal, this Court determined the appellant was entitled to a new trial because (1) the appellant had a right to be present during the jury questioning, and (2) his substitute counsel had no reasonable strategy in blindly following the lead of co-defendant's counsel. *Id.*